et al., 05, 1395, and 1411. Mr. Gorenstein, I understand you've made the strategic judgment to use five of your minutes and save ten. I believe that would be sufficient, Your Honor. You can reevaluate that as you proceed. Good afternoon. My name is Charles Gorenstein. I represent the appellant, the petitioner, and the patent under Pro-Tech. This is a fairly straightforward patent case. I'll hesitate to use the term plain vanilla. It involves no novel issues of law. I believe there are none. The errors of the court below are addressed fairly thoroughly in the briefs. I'd like to focus here on an underlying question, and perhaps cut through any confusion that might exist. The question that this case turns on is, is this element, which is a model of the accused device, is this a channel as required by the claims of the patent? Now let me explain what this is. This is a model of a snow pusher. A snow pusher is like a snow plow. It would be much longer than this, of course, and a snow pusher has a plate on each end, so when you push the snow forward, it doesn't spill to the sides. We haven't had much opportunity to imagine that this winter. Fortunately. The parties agree that all of the elements of the claims that are required by—all the elements required by the claims are found in the accused device, with one exception that's argued, the vertical reinforcing channel. This is a horizontal reinforcing channel, and a vertical reinforcing channel, of course, is perpendicular. That's the accused? This is the accused. Where is the channel? This is the channel. The parties and the court below— But the channel's in back, isn't it? Well, the channel is mounted on the back as a vertical reinforcing element, reinforced  in this case, and that is a channel is a structural element having a U-shaped cross-section or a C-shaped cross-section, depending on the orientation you're holding it. Why doesn't that imply that it's U-shaped from beginning to end, and that the sides have the same dimensions from beginning to end of the channel? Because there is no such limitation for the ordinary definition of a channel. There's nothing in the patent or the prosecution history that limits it in any way other than the ordinary definition. In fact, the defendant, RCS, argued very specifically there's nothing in the patent or the prosecution history that qualifies or limits the definition of channel. That's their argument, and we agree with that. Well, the district court, of course, pointed to a number of dictionary definitions that talk about channels being a long gutter, groove, or furrow, a metal bar, a flattened U-shaped section, a lengthened groove or furrow. All of these things almost suggest that the sides are pretty much the same throughout the entire length, do they not? No, they do not, Your Honor. Well, first of all, if you look at this element, which is the accused element, any place that you would slice this, you would have a U-shaped cross section. Is that a question? Yes, I understand. So you're emphasizing the U-shaped cross section, but you're not addressing some of the other definitions. All of these definitions that are set forth in the district court's opinion on page 9 of the appendix don't talk about necessarily the U-shaped section, but talk about the structure of being a channel bar, a beam flanged to form a channel. That's correct, Your Honor, but the district court adopted from the various possible definitions of channel, the definition that it is a structural element of U-shaped cross section, because that is the appropriate definition in this context, and under Phillips, that was the proper thing for the court to do. So you're saying that basically the U-shaped or C-shaped sectional configuration is what sets channels apart from other structural components? Correct. And the parties don't disagree about that definition. So what about this limitation that the district court mentioned about a channel having a curved configuration to conform to the curvature of the blade? The vertical channels depicted in the 755 patent have a curved back that parallels the curvature of the snow pusher blade. Well, that's incorrect. The court was incorrect when it said that. What basis did the district court find for that conclusion? I don't believe it had any basis for that. I think the court was probably assuming that because the back of a plow is typically curved in some measure, that the channel, as disclosed in the patent, must also be curved, but that's not correct. If you look at the disclosure of the patent, column two is on appendix 40. It talks about the channels being straight, and in fact, Your Honor, this is a model of the channel as depicted in the patent, and you can see that the channel is straight. Were these stipulated exhibits in the district court? Yes, this was stipulated. Notice was given that these would be used. Now, in both cases, you'll see that the edge that meets the back of the blade is carved, if you will, to match the contour of the blade, and that's not part of what's in this patent. It's just the ordinary expedient that any person constructing this would do. You make the pieces meet, and their shapes match. You see that this channel is a U-shape throughout its cross-section. Not perfectly uniform. It's very slightly because of the manner in which it's used. And similarly, this is U-shaped throughout its cross-section. Again, not perfectly uniform. But I'm not, I'm sorry, I'm still unclear about what the status of the models that you're using are here. Is the other side stipulated that that yellow piece that you just held up is representative of what the patent depicts? I don't believe we have a stipulation. This was a model that was used in the court below. This was a model that you presented? Yes. Okay, so it's your argument that that depicts what's in the patent. It's not agreed that that's what's depicted in the patent. I do not know if there's been a stipulation to that in the court below. There has not been in this proceeding. But there's been notice to RCS that this would be used in the proceeding, and no objection. Okay. Mr. Kornstein, you're into the amount of time you wish to save. It's up to you to use it or save it. I'd like to answer your questions and make one point or two. But on rebuttal, you can only either answer questions or rebut. Correct. Mr. Gianforte, did I misunderstand you? Well, the point I'd like to make is simply, well, a few moments, I'll use my time. The basis for the argument that the defendant has been using is that this isn't a channel, it's a box to gusset. They have a new name. Now, the term gusset is a known term in New York. A gusset is a structural element used for reinforcement. And if you have two elements that meet at an angle, a gusset might be used to stiffen the angle. Now, if you look at one side of this element, just one piece in isolation, it might fairly be called a gusset. And the other side, in isolation, might fairly be called a gusset. And a gusset is a broader term, if you will, as RCS has argued. But we don't have a gusset here. We have several pieces, two pieces joined with a third piece, to create a new structure. And just like this lectern is made up of many flat boards, we wouldn't say this is not a lectern, it's a collection of flat boards. It's a lectern. And to say that this is not a channel when it meets the agreed-upon ordinary definition, simply because we could characterize its separate parts, is not a proper or fair argument. So this renaming or name-game, I believe, is insufficient to counter the fact that they've admitted that they meet the definition. The district court applied a very narrow definition of importing from the drawings a feature that's not a critical part of this invention. There's no authority to do that. The district court narrowed the claim improperly. It's discussed in the briefs. And the district court made an erroneous ruling about estoppel. It's also discussed in the briefs. And so on those points, we'll rest on our briefs. And at this point, I will reserve my rebuttal. Thank you. We'll save it for you. Just plow ahead. Thank you very much, Your Honor. My name is Gary Gianforte. I represent the respondents. First, I was present at the argument below. And I can assure you that these exhibits were not stipulated to, number one. They were shown to us at the oral argument for the first time. The court apparently took notice of it. You mean at the oral argument? At the argument below. Below. Yes. But there was no prior stipulation to that. But I'm sure the court below did take a cognizance of the exhibits at the time it rendered its ruling. Do you agree or disagree that the yellow piece is representative of the channel that's depicted in the patent packet? Well, what I do agree with is that it is a piece of extrinsic proof. I think what's more important is the question of— No, but you're not answering my question. Well, I think it's reasonably close. It's important. It's reasonably close. I mean, I can't say geometrically it's exact. Okay, but the problem is that it's depicted in that model of the yellow piece that corresponds to the channel in the patent. It doesn't have equal sides all the way down. It does not. However, I think that's a function simply of the fact that the sides of the channel appear to have been shaved off for purposes of adhering to the back of the channel. However, I think you still need to look to the intrinsic proof relative to this matter to be able to discern what third parties would be able to glean from that in order to determine what it is that's being protected. Isn't Mr. Gorenstein correct, though, that the essential characteristic of a channel is its U-shaped or C-shaped section? I have no disagreement with that. I think the problem with the appellant's argument is simply that it immediately jumps to the conclusion that because an ordinary dictionary definition defines it in that way means that as a result their patent protection is coextensive with that definition. I note with great interest that the appellant did not cite the Phillips case in either of its briefs to this court, and I think the Phillips case is controlling here. But what is it in the written description that you see that departs from that definition? Well, I think we have to look first to see that there's not too much in the intrinsic file to determine what it is that is meant by channel. There's nothing in the claim. The specification merely says that it's straight, and it happens to be welded to the back of a snow blade. So in the prosecution, history doesn't define it either. It simply says that it is not certain things. It distinguishes it. With respect to the straight characteristic, do you agree with me then that the district court was mistaken in characterizing this channel as having a curved back that parallels the curvature of the snow pusher blade? Well, I think that is probably correct. I think that it's a question of which axis you're talking about. I'm correct in questioning the district courts? No, I think the district court was correct in the way it assessed the channel as depicted in the embodiment and as—well, there is no verbal description of what a channel is in the patent. I think the point— The patent itself, though, describes this structure as being a welded straight channel. But the question is on what axis is it straight? I certainly agree that if you're looking at it on this axis, it's straight. We don't know which axis the patentee or the applicant was claiming was straight. Well, it says straight. We may not know which axis, but where does it say curved? Well, I think it has to be curved because of the fact that it's being attached to a curved surface. Well, maybe the front of it is curved, as that model shows, but the back of it is perfectly straight. It may be on this, but we don't know exactly how it is on—as it relates to the intrinsic proof of the case, is my point. I'm not arguing against this. I'm arguing against the patent itself and the claim, the specification. And the only thing within the four corners of the patent which gives any meaning whatsoever to the claim, and that is the embodiment. Now, the Vitrionics case says that— Yeah, but there's nothing in—you still haven't pointed to anything in the patent that discloses a curved back. Again, all I can say, Judge, is that all we have is what the patent says and what it shows. It's hard to argue against this drawing. The patent says it's straight. We may have an argument about what that means. And the patent has an illustration in Figure 4, which is what the district court seemed to be referring to, but I can't find anything in Figure 4 that shows a curved back. That may be true, but by the same token, we do not have anything which is triangular either, in terms of literal infringement. We have two gussets here, which happen to be joined together by a steel plate, forming what's called a box gusset, for lack of a better term. But this is what is alleged to infringe. Why is the triangular shape of this side significant if the structure you're holding in your hand is a channel? Because that's all the claim says, is a channel. Well, we believe it's significant because of the fact that there are multiple depths to this alleged U or C shape. It makes it different. Because it's made of separate components that are welded together. Essentially, yes. What this is, is a gusset. It's a triangular piece of material, two of them that happen to be shaped together, formed together through the use of a steel plate. So your contention is that a channel in this art meant something that was forged from a single piece. Well, technically the definition is a hot rolled steel product. So it's one piece that's been rolled to form a particular shape. And I think the point too, is that this is not a unique invention. It's a crowded field of art, and the applicant went to great pains to try to distinguish itself in terms of its channel not being certain other things. And now they try to move backward into a dictionary definition to say that not only are we what we say we are, but we're anything else that remotely approaches it. And I think that's inappropriate. It's an attempt to recapture that which it relinquished in order to obtain the patent allowance at the time over initial objection by the patent office. You're referring to the prosecution history in which an argument made to distinguish this invention over its channel. That's correct. Well, why should that be interpreted to be a surrender of anything other than angles? Well, I guess the point I'm trying to make, Judge, is that if we're going to—the question is whether or not we should allow the use of a dictionary definition to set the parameters of the patent. And I'm suggesting that we should not because of the fact that there has been no expression that that's the definition that they intended. The only expression within the intrinsic evidence is merely the drawing. And I think most people ordinarily skilled in the art would assume that from that drawing and from their understanding of what a channel generally is would be more this than this. As a matter of fact, I believe this case is essentially a poster child for the Phillips case in that the reflexive use of a dictionary definition to set the outer boundaries of the patent would be inappropriate. And it was not the intention of the applicant here to cover all types of vertical reinforcing devices of which the box gusset is one, but merely to distinguish itself in the form of a vertical channel. Now, assuming that the court below was correct in that we do not have literal infringement, there's only one other issue to be addressed, and that is the issue of the possible infringement under the doctrine of equivalence. And I note that the London v. Carson-Perry-Scott case in 91 suggests that finding of equivalence under these circumstances should be the exception and not the rule, and that this really shouldn't be a second bite at the apple to extend inappropriate patent protection. And I agree as well that the Graeber test applies. And I believe that we do reinforce the back of these snow pushers in a way that is different from the one depicted in the patent, and that is we have a gusseting type of material rather than a channel type. And the fact that the claimant and claim to use both terms to include it as well, gussets as well as channels, at least indicates that in the applicant's mind that we're talking about two different types of structures. And I think that the way that the channels and gussets reinforce are different. And as a result, I believe we have a distinction in terms of the way that our particular element reinforces as compared to the way that the channel reinforces. And as well, we perform an additional function in that not only do we vertically reinforce the blade, but we also support or reinforce the row of upper posts as well as a result of the triangulation of the boxed gusset. But I think overarching all of this in terms of the way to look at this type of a claimant in the doctrine of equivalence context is the fact that this is not a pioneered type of invention. There are a lot of prior snow pushers out there that had been patented. I come from up north, and we get lots of snow, and you see all kinds of configurations out on the streets. All of them have vertical reinforcing elements. There's no question about that. Again, the applicant at the time of patent application went to great pains to try to distinguish itself away from angle bars and angle irons. And indeed, in its specification, it says that ribs aren't dead either. It tried to limit itself very closely to channels as being different from and better than anything else in the market. And it was based upon that that the patent office allowed this patent to go through. And now, like a compressed dried sponge, after getting allowance, we're throwing a little bit of water on it, and the appellant now is trying to expand out that initial narrowed field to say that, hey, look, any kind of vertical reinforcement here is going to be infringing under the doctrine of equivalence. We don't believe the boxed gusset does, which is the closest we come to a channel. They allege that on top of that, even our subsequent iterations of vertical reinforcements such as a rib, which they have already said does not comport with or does not qualify under these circumstances, and as well structural steel tubing also infringe. I think it's pretty clear that they're overreaching. They're trying to recapture an area that they had to relinquish in order to obtain their patent in the first instance. Thank you very much. Mr. Bernstein, you have a little time. Thank you, Your Honor. Mr. Bernstein, what about their argument that this channel, by definition, has to be forged out of a single piece of metal? The dictionary definitions that the district court cited on page 9 do seem to support that. What's your answer? The definition adopted by the – that is one possible definition. A channel could be rolled from one piece of metal. It could be folded from one piece of metal. It could be formed by joining several pieces together. Well, how do those definitions suggest that it could be formed by joining several pieces of metal together? The definitions don't address it. The point is that the court – and with all respect to counsel, I believe it's a bit late for counsel for RCS to be arguing the definition that's been adopted in this case. The court adopted it. The parties agreed to it. And in their brief, I'll point you to the RCS brief, pages 9, 13, and 15, they argue that the definition adopted is correct. What's the definition? The definition of a channel, the U-shaped or C-shaped cross-section. As the proper definition – But I mean, it doesn't preclude – it doesn't address the question of whether it's made out of a single piece of metal. Correct. It doesn't address the question. And these definitions talk about a metal bar and an iron bar being flanged to form a channel. These definitions seem to assume that the channel is made from a single piece of metal rather than welding pieces of metal together. What's the answer? The answer is that the definitions that are in various dictionaries may address the possible methods of manufacturing. The court correctly, under Phillips, looked at various definitions and concluded what was appropriate as an ordinary definition in the context of this patent. There might be many definitions that just simply don't make any sense at all. Yeah, but you're not responding to what I'm saying. I'm trying to. We review claim construction de novo, right? Correct. We look at the available materials, right? One of the available materials is a dictionary. These dictionaries seem to define a channel as being made from a single piece of metal. Now, if we exercise our authority to construe the term channel, why shouldn't we require that it be made out of a single piece of metal? Because the critical aspect of the channel is its shape, which resists buckling and other forces in a manner that's unique as compared to angles, which we agree are not included in the term channel. It is of little or no consequence in either of these examples of the channel whether these side elements are folded from a larger sheet, whether they are rolled, which is a form of folding, or whether this is cast or extruded as a single piece, or whether the sides are attached by welding, for example. If you were not using steel, if you were using plastic, you might join the pieces by glue, for example. That would be suitable for that material. But you're not citing anything. I mean, what's the basis for saying, either in the specification or the expert affidavits here or anywhere else, for contradicting the notion that a channel is made out of a single piece of metal? There's no specific discussion in the patent that says it must be made or may be made out of one or several pieces because all of those are reasonably understood and included in the term channel. It's an element having a U-shape or C-shape cross-section. The method for producing the channel that would be suitable for a snow pusher, for example, was not addressed because it's not critical. It could be made by any method as long as you have that C-shape or U-shape cross-section which provides the strength that's required. That's the important thing. How you get that piece is not of consequence. The definitions that the court looked at, some of them included some reference to possible ways of making a channel. RCS in its brief was arguing it must be sort of preformed. Someone else has to make it. You have to buy it that way. RCS is itself a steel fabricator. They make steel pieces of all kinds, and one of the things they make is this channel. The notion of who made it doesn't determine whether or not it's a channel. As I mentioned, for RCS to now be arguing that the definition used by the court after consideration of various dictionary definitions, for them to argue it's wrong is inappropriate in their brief, and I'll point you again to pages 9, 13, and 15, they argued that that definition must apply. To now say it's maybe not quite right is, well, switching horses in the middle of the stream here. The court correctly observed that nothing was relinquished in the way of meaning of channel. Simply a distinction was made, an angle is in a channel, nothing more was said about that. The curved back, to the extent anything is not straight, both of these examples have a curved edge that meets the back of the blade. That's what any craftsman would do, mating them together. The point is, this channel is straight. This one is straight in its own way. But straight isn't really the issue. The court got misled with this notion of curve, which came out of nowhere, and I think that led to the court's error. But the notion of straight or curved isn't really an issue here, I believe. I think your time is up, Mr. Kornstein. Okay. Thank you very much. Thank you for your attention.